**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DEVIN A. ROBINSON,
    *Plaintiff*,

    v.

VELOSIO, LLC, *et al.*,
    *Defendants*.

Civil Action No.
25-2270-ABA

**MEMORANDUM OPINION**

*Pro se* Plaintiff Devin Robinson alleges that he was hired by Defendant Velosio, LLC and fired ten weeks later. He alleges that his firing was racially and retaliatorily motivated, that he was subjected to a hostile work environment, and that Velosio violated the Maryland Wage Payment and Collection Act by reducing his final paycheck because he took paid leave he had not earned. Defendants, including Velosio and Mr. Robinson's supervisors, have moved to dismiss the third amended complaint with prejudice for a number of reasons, including that Mr. Robinson's claims are barred by the settlement and release agreement that he signed in exchange for two weeks of severance pay. The Court agrees with Defendants and will grant their motion to dismiss on this ground.

**STANDARD OF REVIEW**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations

must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Mr. Robinson is self-represented, so the Court must construe his complaint liberally, holding it to "less stringent standards than [those] drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "liberal construction of a pro se plaintiff's pleading does not require the court to ignore clear defects in pleading." *Chrisp v. Univ. of N.C.-Chapel Hill*, 471 F. Supp. 3d 713, 716 (2020).

## BACKGROUND

The facts presented are those relevant to Defendants' argument that Mr. Robinson's claims are barred by the "Velosio Settlement Agreement and Release of Claims" ("the Agreement") that he signed. "Velosio is one of the largest Microsoft Business Solutions Partners in North America and provides consulting services." ECF No. 31 ¶ 24. Mr. Robinson was hired by Velosio in July 2023 "as a full-time salaried Associate Consultant in its post-graduate program called 'Velosio University' of fewer than fifteen consultants." *Id.* ¶ 25. "Soon thereafter," Mr. Robinson was placed on a Performance Improvement Plan ("PIP"). *Id.* ¶ 35. Mr. Robinson was then fired on September 20, 2023 and presented with the Agreement that offered two weeks of pay and an extension of benefits in exchange for releasing any claims against Velosio. *Id.* ¶¶

54–55; ECF No. 34-4 ¶¶ 1–2.[1] Mr. Robinson alleges that the PIP and his firing were motivated by racial discrimination and retaliation. ECF No. 31 ¶¶ 78–80.

Mr. Robinson further alleges that he was never verbally offered an option other than signing the Agreement in exchange for the payment, he was not encouraged to consult counsel, he was not given adequate time to consider the Agreement, he was not verbally told that the Agreement contained a release of claims, and that "[t]he offer was made under financial and emotional pressure and with the idea of termination as an alternative, rendering the decision involuntary." *Id.* ¶¶ 55–58. Mr. Robinson also alleges that when he "asked whether any alternatives existed," his supervisors "confirmed that no other options or additional pay were available to" him. *Id.* ¶ 59.

After Mr. Robinson was fired, Velosio deducted twelve hours of pay from his final paycheck for "overuse" of paid time off ("PTO"). *Id.* ¶¶ 63, 67. Mr. Robinson recognizes that the employee handbook he signed "authoriz[es] automatic deductions for negative PTO balances," but claims that policy violates the Maryland Wage Payment and

---

[1] The Agreement, as well as the employee handbook (portions of which are attached to the third amended complaint), are integral to Mr. Robinson's claims and the Court will consider them without converting the motion into one for summary judgment. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that a court may "consider documents that are explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits," and documents that [were] not attached to or expressly incorporated in a complaint, so long as the document[s] [were] integral to the complaint and there is no dispute about the document[s'] authenticity"). All parties agree that it is appropriate to consider the Agreement in connection with the motion, and Mr. Robinson has not objected to Defendants' citations to the employee handbook or its authenticity. ECF No. 34-1 at 15 (Defendants providing that "[t]he Court may consider [the Agreement and the employee handbook] without converting this Motion to a motion for summary judgment"); ECF No. 36 at 12 (Mr. Robinson asserting that "the Court may properly consider [the Agreement] without converting the motion to one for summary judgment").

3

Collection Law, Md. Code, Lab. & Empl. § 3-503 ("MWPCL"). *Id.* ¶¶ 67, 69; *see* ECF No. 34-3 at 16 (the relevant handbook provision stating that "[t]o provide added flexibility, you are also allowed to go up to 40 hours in the negative on PTO" but that "should you leave the company with a negative PTO balance, the amount owed will be deducted from your final paycheck").

Mr. Robinson filed this action in July 2025, two years after he was fired. ECF No. 1. He has amended his complaint three times, culminating in the current third amended complaint, which he filed in October 2025. ECF No. 31. Defendants filed the pending motion to dismiss, Mr. Robinson filed a response, and Defendants filed a reply. ECF Nos. 34, 36, 40. Mr. Robinson also filed a "Declaration Regarding Citation Clarifications" in which he attempts to explain why his response brief contains non-existent cases and quotations, as pointed out in Defendants' reply brief. ECF No. 41. On April 22, 2026, the Court held a hearing on Defendants' motion for sanctions, during which the Court provided the parties an opportunity to address the motion to dismiss.

## DISCUSSION

Among other things, Defendants argue that the release in the Agreement bars Mr. Robinson's claims. The Court agrees. The Agreement provides that in exchange for two weeks of severance pay and a continuation of benefits, Mr. Robinson waived "any and all claims of any nature," specifically including discrimination claims. ECF No. 34-4 ¶ 1.

## A.    Knowledge and Voluntariness

Mr. Robinson argues that the release is not binding because he did not knowingly and voluntarily waive his claims. When deciding if a waiver of discrimination claims was knowing and voluntary, courts consider, under the totality of the circumstances, (1) the employee's education and business experience, (2) the respective roles of the employer

4

and employee in determining the terms and conditions of the waiver, (3) the clarity of the agreement, (4) the time the employee had to study the agreement; (5) whether the employee had the advice of counsel, (6) whether the employer encouraged the employee to seek the advice of counsel and whether the employee had sufficient time to do so, and (7) the waiver's consideration. *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 493 (D. Md. 2002), *aff'd*, 63 F. App'x 169 (4th Cir. 2003).[2]

First, Mr. Robinson has pled that he is a college graduate and was qualified to be an associate consultant at Velosio, showing that his educational experience is more than sufficient to understand the Agreement. ECF No. 31 ¶¶ 3, 39. Second, Velosio drafted the Agreement, but Mr. Robinson understood that he could attempt to negotiate the terms. *Id.* ¶ 59 ("After Plaintiff asked whether any alternatives existed, [his supervisors] confirmed that no other options or additional pay were available to Plaintiff."). Third, the release language is clear, with the first two paragraphs detailing what consideration Mr. Robinson would receive for waiving any claims against Velosio. ECF No. 34-4 ¶¶ 1–2. Fourth, the Agreement afforded Mr. Robinson twenty-one days to consider its terms and seven days to revoke consent to them, and he did not revoke consent. *Id.* ¶ 11.d; *see Salami v. Jubilee Ass'n of Maryland*, No. Case No. 20-cv-3532-TDC, 2021 WL 2784632, at *5 (D. Md. July 2, 2021) ("[D]espite the fact that Salami did not take a significant

---

[2] The parties cite to Maryland law in their briefs, but Defendants point out in their reply brief that the Agreement states that it is governed by Florida law. ECF No. 34-4 ¶ 8. But as also noted by Defendants, Florida utilizes essentially the same factors in determining whether a waiver was knowing and voluntary. *Allen v. Reliaquest, LLC*, Case No. 8:23-cv-0806-KKM-AEP, 2025 WL 1266740, at *3 (M.D. Fla. May 1, 2025) (quoting *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996)). Given that the parties have both relied exclusively on Maryland law, the Court will as well and will consider the choice-of-law provision mutually waived.

amount of time to consider the Agreement prior to signing it, he in fact was given ample opportunity both before and after executing the Agreement to decide whether he would voluntarily waive his right to bring Title VII claims in exchange for the severance payment."). Fifth and sixth, while Mr. Robinson does not appear to have consulted counsel, and alleges in a conclusory fashion that he was not encouraged to do so, ECF No. 31 ¶ 57, the Agreement states otherwise. ECF No. 34-4 ¶ 11.c ("Employee has been advised to consult an attorney before entering into this Agreement."); *see Randolph v. Caruso Homes, Inc.*, Case No. 13-cv-2069-RWT, 2014 WL 4661985, at *5 (D. Md. Sept. 16, 2014) ("It is undisputed that Randolph did not have the advice of counsel. However, the express terms of the Release encouraged her to seek counsel, and she had at least seven days following the execution of the Release to do so."). And, as stated, the Agreement provided Mr. Robinson ample time to consult counsel. ECF No. 34-4 ¶ 11.d. Seventh, Mr. Robinson was given adequate consideration for the release, which included two weeks of additional pay and an extension of benefits. *Id.* ¶ 2; *see Randolph*, 2014 WL 4661985, at *5 ("Randolph received adequate consideration for her waiver of claims in the form of two weeks of pay."). Mr. Robinson argues that the consideration violated the MWPCL because Velosio subtracted twelve hours of pay due to his negative PTO balance. This argument is considered and rejected below in subsection C. Mr. Robinson's own filings show that the twelve hours was taken from his last paycheck, not the consideration for signing the Agreement. While considering all of Plaintiff's factual allegations as true and construing all reasonable factual inferences in his favor, after weighing these factors and looking at the totality of the circumstances the Court concludes that Mr. Robinson neither has adequately pled that his waiver was less than

knowing or voluntary, nor can he do so based on the language of the Agreement that he signed.

**B.    Duress**

Mr. Robinson has also not adequately alleged that he signed the Agreement under duress such that the Agreement is voidable. Mr. Robinson alleges in his complaint that "[t]he offer was made under financial and emotional pressure and with the idea of termination as an alternative, rendering the decision involuntary," ECF No. 31 ¶ 57, but he does not allege, as he must for his duress claim to proceed, that Defendants engaged in any "wrongful act which deprive[d] [him] of the exercise of his free will," *Eckstein v. Eckstein*, 38 Md. App. 506, 512 (1978). To constitute duress in this situation, the "wrongful act" must "leave[] the victim with no reasonable alternative other than to execute the agreement." *Randolph*, 2014 WL 4661985, at *4 (quoting *Emps. Ins. of Wausau v. Bond*, Case No. 90-cv-1139-HAR, 1991 WL 8431, at *1 (D. Md. Jan. 25, 1991)).

Mr. Robinson was not required to sign the agreement. He signed it so he could receive the additional compensation offered after learning his employment was terminated. *See Randolph*, WL 4661985, at *4 ("[T]he potential financial impact from the loss of a job is not, by itself, sufficient to set aside a contract for duress. Otherwise, nearly every settlement ending an employment dispute would be voidable at the election of the employee.") (citing *Cassiday*, 220 F. Supp.2d at 492). Mr. Robinson's alleged emotional pressure is also insufficient to show duress. *See Campbell v. Pearl River Techs., LLC*, Case No. 22-cv-00949-JRR, 2023 WL 4534551, at *8 (D. Md. July 13, 2023) ("Plaintiff's arguments focus solely on the financial and emotional distress of her

termination—she repeats numerous times she was stressed, angry, overwhelmed, and distraught. Such actions do not form the basis for duress.").

Mr. Robinson has filed four versions of his complaint. It is clear that he cannot allege more than that he felt emotional and financial pressure to sign the Agreement, and therefore, even accepting his factual allegations as true he has not stated a claim based on duress on which relief can be granted. Further amendment on this point would be futile.

## C.       Voidability Due to Violations of the MWPCL

Finally, Mr. Robinson argues that the Agreement is void because Defendants' deduction from his pay of the twelve hours of unearned PTO violates Maryland law. Specifically, he asserts that "[t]his deduction was made after separation and without Plaintiff's written consent, contrary to Maryland law, which prohibits employers from withholding or diverting wages except by court order, statute, or the employee's advance written authorization." ECF No. 31 ¶ 6 (Citing Md. Code, Lab. & Empl. § 3-503).

First, the PTO balance was taken out of Mr. Robinson's final paycheck, not his severance pay that was the consideration for the Agreement. ECF No. 31-2 (email to Mr. Robinson explaining that the negative twelve hours of PTO would be taken out of his final paycheck); ECF No. 31-4 (email to Mr. Robinson explaining that "[o]n the September 30th payroll" he was paid for his final week and that the negative PTO balance was taken out of that paycheck, and that he would receive a separate check "[o]n the October 15th payroll" that included the two weeks of severance pay); ECF No. 34-4 ¶ 2 (the Agreement providing that in exchange for the release, Mr. Robinson's salary would be paid through October 6, 2023). Thus, even if Mr. Robinson had a viable wage

claim (which he does not), it would not have invalidated the Agreement due to illegal consideration.

In his response brief, Mr. Robinson acknowledges that the leave deduction was taken from his last paycheck, not his severance pay. ECF No. 36 at 9 ("The record establishes that Velosio unlawfully deducted hundreds of dollars from Plaintiff's final earned-wages paycheck for September 30, 2023, claiming that Plaintiff had 'overused' paid time off (PTO)."). But Mr. Robinson argues that "[t]he consideration underlying the separation agreement was directly connected to—and funded by—this unlawful deduction," because there was "no break in payroll between the final earned wages and the severance period, forming one continuous transaction." *Id.* at 10. He argues that, therefore, the consideration for the Agreement was illegal. This analysis is incorrect. Regardless of whether Mr. Robinson signed the Agreement, Velosio would have deducted the negative PTO balance from his last paycheck. Separately, he received an additional two weeks of pay because he signed the Agreement.

Regardless, Mr. Robinson has also failed to allege a viable MWPCL claim based on the deduction of the twelve hours of unearned PTO. "An employer may not make a deduction from the wage of an employee unless the deduction is" "(1) ordered by a court of competent jurisdiction," "(2) authorized expressly in writing by the employee," "(3) allowed by the Commissioner because the employee has received full consideration for the deduction," or "(4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit." Md. Code, Lab. & Empl. § 3-503. Here, Mr. Robinson received full consideration for the deduction given that he had been overpaid for PTO he took but that he had not earned. *Id.* § 3-503(3). As recognized by Mr. Robinson, ECF No. 31 ¶¶ 67, 69, the employee handbook that he signed explains the use

of PTO and what happens if his PTO balance is negative at separation. ECF No. 34-4 at 16 ("[S]hould you leave the company with an negative PTO balance, the amount owed will be deducted from your final paycheck where subject to state law."). This provision does not violate section 3-503 because Mr. Robinson was paid for PTO that was not earned, and Velesio was within its rights to recoup that pay.

## CONCLUSION

Viewing all facts in the light most favorable to Mr. Robinson, he has not alleged that his acceptance of the Agreement was less than knowing and voluntary, nor can he. Mr. Robinson has also not alleged facts showing that he signed the Agreement under duress, and after four complaints, it is apparent that he cannot do so. Finally, Mr. Robinson has not shown that the Agreement is void because the compensation he received for signing the Agreement was illegal. Therefore, Defendants' motion to dismiss will be granted and the third amended complaint will be dismissed with prejudice.

A separate order follows.


Date:  May 4, 2026                                    _____/s/_____
                                                     Adam B. Abelson
                                                     United States District Judge